# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WESLEY JACOBS, | ) | CASE NO. 5:19-CV-466 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | TEMPORARY RESTRAINING |
| | ) | ORDER |
| SECURITAS ELECTRONIC SECURITY, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

On March 1, 2019, plaintiff Wesley Jacobs ("Jacobs") filed the present declaratory action against his former employer, defendant Securitas Electronic Security, Inc. ("Securitas"). (Doc. No. 1 (Complaint).) Securitas subsequently moved for a temporary restraining order and preliminary injunction to prevent Jacobs from violating the terms of the parties' employment agreement, which included a non-compete covenant. (Doc. No. 5 ("TRO").) The Court referred the request for temporary injunctive relief to the magistrate judge for the preparation of a report and recommendation ("R&R"), which the magistrate judge issued on April 16, 2019. (Doc. No. 13 (R&R).) In the R&R, the magistrate judge recommended that the Court issue a temporary restraining order prohibiting Jacobs from violating the terms of the parties' employment agreement by: (1) disclosing or utilizing proprietary information obtained from Securitas or its predecessor, Kratos; (2) communicating with customers of Securitas or Kratos of which Jacobs had any sales or client relations within the last 12 months; (3) communicating or assisting others in communicating with any prospective clients of Securitas or Kratos; or (4) soliciting any

employee or agent of Securitas to terminate employment with Securitas. (R&R at 156-57.)

Now before the Court are Jacobs' objections to the R&R. (Doc. No. 15 ("Obj.").) Securitas has filed a response. (Doc. No. 16 ("Res.").) For the reasons that follow, the objections are overruled, and the motion is granted.

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (table decision), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, No. 1:14–cv–2302, 2015 WL 5316216, at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell*, *inter alia*, 1994 WL 532926, at *1); Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.

The Court has reviewed the R&R, the record, and the parties' submissions. The Court finds, and Jacobs does not dispute, that the magistrate judge applied the proper standard for consideration of a request for temporary injunctive relief under Fed. R. Civ. P. 65, and further identified the governing law relating to non-compete agreements. (*See* Obj. at 168.) Further, most of Jacobs' objections amount to a rehashing of the arguments raised in response to Securitas motion, and therefore are not proper objections.

For example, Jacobs renews his complaint that the non-compete covenant is too restrictive as it effectively prohibits Jacobs from working in anywhere in the United States in the relevant industry. (Obj. at 169-70.) In support, he cites *Lindsey Constr. & Design, Inc. v. Luttrell*, No. 2014CA00006, 2014 WL 1632140 (Ohio Ct. App. Apr. 21, 2014). Jacobs' reliance on *Lindsey* is misplaced, as there was no indication in *Lindsey* that the construction company that sought to enforce its restrictive covenant did business nationwide. Where a company's business is nationwide, a more expansive geographical restriction is appropriate. *See, e.g., Try Hours, Inc., v. Douville*, 985 N.E.2d 955, 965-66 (Ohio Ct. App. 2013) ("the nationwide scope of the covenant not to compete is particularly necessary in light of the fact that the trucking industry is a multistate industry").

The parties' agreement restricts Jacobs from working during the covenant period in his "assigned market area." During the parties' telephone conference with the magistrate judge, Securitas represented that Jacobs' former "assigned market area" included the United States and Canada. While Jacobs complains that the magistrate judge merely accepted Securitas' representation as to scope of his prior market area, he offers no alternative description, nor does he deny that Securitas competes on a national and even international basis.[1] Given the fact that Securitas does not seek to prevent Jacobs from working for Convergint, his current employer,[2] and does not seek to prevent him from performing work nationwide so long as he does not violate the terms of the agreement, the Court finds that—at least at this stage in the proceedings

---

[1] Jacobs also does not challenge Securitas' representation that, as a "Senior Account Executive—National Financial Sales," he serviced national customers, such as JPMorgan Chase. (*See* TRO at 92, 94.)

[2] Both sides agree that neither the agreement nor the R&R necessarily prohibits Jacobs from working for Convergint, so long as he does so in a manner that does not violate the agreement. (*See* Obj. at 166, n.2; Res. at 176.)

and upon the present limited and undeveloped record—the restrictive covenant is reasonable as it is restricted to one year and extends to the boundaries of Securitas' business. *See FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 525-26 (6th Cir. 2013) (one-year covenant restricting competition in multiple states appropriate where limited to company's business area); *Horter Invest. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 905 (S.D. Ohio 2017) (where parties did not dispute that the employer's business was national, a nationwide noncompete provision was reasonable); *see, e.g., Akron Paint & Varnish, Inc. v. Budd*, No. 5:16CV2944, 2016 WL 7235536, at *3 (N.D. Ohio Dec. 14, 2016) (permitting employee to remain with new employer but restricting ability to compete for one year on a nationwide basis). This objection is overruled.

Jacobs' next two objections can be treated together. First, Jacobs complains that the magistrate judge did not address his argument that the agreement is unconscionable because it is one sided. Specifically, he argues that the agreement is unconscionable because he was forced to agree to the restrictive covenant "in return for nothing." (Obj. at 170.) Second, Jacobs argues that the agreement fails for lack of consideration. Both objections are without merit. According to Jacobs, the "consideration" for the non-compete is "spelled out in the Agreement itself[,]" namely, new proprietary information. (*Id*. at 171.) He notes (as he previously did before the magistrate judge) that he received no new confidential or proprietary information from Securitas after it purchased Kratos, and that he merely continued to service his existing customers following the sale.

But, Jacobs fails to cite the remainder of the non-compete provision that specifically provides that it is given "in consideration of the [employee's] employment or continued employment with the Company." (Doc. No. 4-1 (Restrictive Covenant Agreement) § E.3.) It is

4

well settled Ohio law that consideration exits to support a noncompete agreement where the employer proffers a noncompetition agreement in exchange for continuation of an at-will employment relationship. *See Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004). Because continued employment, or in this case continuation of employment with a successor employer, constitutes valid consideration for a non-compete agreement, Jacobs' objections as to the support for the agreement are overruled.

Next, Jacobs argues that the noncompete agreement cannot be enforced because Securitas has breached its duty to pay Jacobs his commissions. According to Jacobs, "[b]y failing to pay Jacobs his earned commissions, Securitas has breached its contract with Jacobs and therefore cannot enforce the Agreement." (Obj. at 172.) As Jacobs conceded in proceedings before the magistrate judge, however, the question of whether Securitas has breached its obligations with respect to Jacobs' owed commissions requires discovery and cannot be addressed in the context of a request for temporary injunctive relief. This objection is overruled.

Finally, Jacobs objects to the magistrate judge's conclusion that Securitas has established that it is likely to suffer irreparable harm if temporary injunctive relief is not awarded. He notes that the magistrate judge found that the only specific confidential information in Jacobs' possession that could cause Securitas irreparable harm is the pricing worksheet for JPMorgan Chase. (Obj. at 173, citing R&R at 154.) He notes that there is no evidence that Jacobs has solicited JPMorgan Chase or attempted to use any pricing information. (*Id.*) Importantly, Jacobs does not challenge the magistrate judge's conclusion that publication of such information *could* result in irreparable harm to Securitas. Jacobs does not deny that he is currently employed by a direct competitor of Securitas while in possession of Securitas' confidential information. Under

5

these circumstances, Securitas is not required to demonstrate that Jacobs has already exploited that relationship in order to be entitled to a temporary restraining order, as the likely dissemination of confidential pricing worksheets is sufficient to demonstrate a likelihood of irreparable harm. *See generally Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (the breach of a non-compete agreement and the unauthorized solicitation of customers constitutes irreparable harm; *see, e.g., Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (threat of irreparable harm established from having obtained confidential information and then securing employment with direct competitor). This final objection is overruled.

Based upon the record at this stage in the proceedings, the Court finds that the balance of the relevant factors favors the issuance of a temporary restraining order that protects Securitas' business and proprietary interests, as defined by the parties' agreement, while permitting Jacobs to remain employed in some non-competing capacity with his current employer. Jacobs' objections are overruled, the R&R is adopted, and the TRO is granted as set forth below. Because Jacobs may remain employed by Convergint in a non-competing capacity, the Court finds that a bond is not necessary during this brief temporary injunctive period. The Court shall schedule this matter for a preliminary injunction hearing at the earliest available opportunity.

Accordingly, it is ordered that Jacobs is enjoined from violating the terms of the agreement by:

> disclosing or utilizing any proprietary information, as defined in the parties' agreement, that he learned during his employment with Securitas or its predecessor, Kratos;
>
> communicating or assisting others in communicating with any customer of Securitas as to which Jacobs had any sales or client relations responsibility during the last 12

months of his employment with Securitas or its predecessor;

communicating or assisting others in communicating with any entity that was a prospective client of Securitas or its predecessor during Jacobs' last 12 months of employment and as to which Jacobs was assigned responsibility for soliciting business or for assisting others in doing so; and

directly or indirectly soliciting or inducing any employee, officer, or agent of Securitas, or any of its Related Companies, to terminate employment therewith.

This order is in effect for a period of fourteen (14) days. Fed. R. Civ. P. 65(b)(2).

    **IT IS SO ORDERED**.


Dated: May 6, 2019

    **HONORABLE SARA LIOI**
    **UNITED STATES DISTRICT JUDGE**